Good morning, your honors. My name is Rene Valladares. I'm here for Mr. Thurman. In this case, the coercive shock and awe tactics used during the arrest of Mr. Thurman rendered his confession and his consent to search involuntary. The lower court found that there was indeed police coercion. However, we disagree with the lower court in that the coercion did not overbear Mr. Thurman's will. In this case, basically what we got is an overwhelming show of force at the front end when Mr. Thurman is being arrested. Mr. Thurman is driving his car. The car is blocked by police vehicles. Seven to nine officers storm out of four police vehicles with their guns, with their guns drawn. They snatch Mr. Thurman out of his car. They throw him to a gun to the floor. They handcuff him. They blindfold him. They throw him in another car, and they transport him to a secondary location. That location, five to ten minutes after arrival, the blindfold is removed. At this point, his girlfriend, who was traveling with him in the car, is not present. Yes, sir. We have read the briefs, and we are familiar with the facts. You have findings here, though, right? I'm sorry, sir? You have findings? Yes, sir. And why, you know, this is a complicated case. It's a complicated factual scenario. Why is this exactly the kind of situation where we defer to the findings of the district court? Well, I think that, first of all, the court, as I said, did find police coercion. The court did credit the fact that Mr. Thurman was scared, as he said, scared to death, as he said. The court did credit the fact that Mr. Thurman was disoriented. The court did credit the fact that he was also I understand. You're sure this is a nuanced, careful analysis of situation from a judge who was there to listen to the witnesses and see them testify? I think the problem, court Why isn't the ultimate finding of lack of coercion? Why isn't that binding on us? Because I think essentially what happens is that in the findings, the findings essentially whitewash or separate this event into two discrete segments. The initial, again, shock and awe type arrest versus the time they are at the secondary location. I don't understand the problem with that. What we're trying to determine is, what was his condition at the time he provided information? And the magistrate judge did that because, in fact, there was a change in how he felt. And I suppose what we're doing is looking at your client. At that particular time, what did he make a voluntary consent? The magistrate judge says, to the contrary, the record supports the what the magistrate judge said was that Thurman was relatively calm during the questions, that his conversation with Officer Vincent was low-key. Vincent was the only officer involved in the questioning, that Thurman was not forced on other seven or nine officers of the task force that were in the scene performing their duties. Now, if that is a factual finding, you'd have to demonstrate it's clearly erroneous. What you're saying is, I understand, that it's clearly erroneous because of something that occurred before. Yes, sir. Yes. And indeed, Your Honor, actually, Mr. Thurman did testify that at the secondary location he was still scared to death, that he was disoriented. But that was the finding. That was not the finding. Apparently, the judge has to make that determination. The court did find, and that is based upon Detective Vincent's or Officer Vincent's testimony, that the conversation was low-key. What's wrong? How is that? How do you show that's clearly erroneous? And that is exactly my point. My point is that you cannot separate this event. That is that once you go ahead and beat up a dog, and then you start talking nice to the dog, the dog's still going to cower down. And that's essentially what happened here. They go ahead and they show... Is that based on dog psychology? Well, it's not, Your Honor. I think it's based on... I mean, I don't know. How can you tell us about dogs? Well, Your Honor, I'm not... Is it a fine... No, I mean, you're sort of drawing on common experience. No, yeah, I am. And precisely on this one point, I am drawing on common experience. I mean, what I am talking about is... What I'm telling you is I don't know what common experience you're drawing on. Some dogs cower, and some dogs bite back. That's why we have, you know, different kinds of dogs, different kinds of people. And we do. And that's why we have people who find facts and listen to the evidence and tell us what the actual situation was here, rather than sort of making some generic decision about what must have happened. And what you're really asking us to say is that even though the district court found that there was a common period and that he calmed down, and then by the time he gave information he had recovered from the shock, you want us to hold as a matter of law that that can't happen. Well, no, Your Honor, I... That's a pretty extraordinary thing for a court of appeals to do. I think what I'm asking, or one, I am saying that the findings that... That's what we'd have to do. Yes. We'd have to say that nobody could possibly recover under these circumstances, even though there was sort of a shock and awe. To begin with, that by the time this happened, at a different location, sometime later, after the situation had changed, as a matter of law, this could not happen. It would be foolish for anybody to find that he had recovered. Mr. Arnon, I don't think what I'm asking, though, is that as a matter of law. I think what I'm asking is that under the circumstances of this case, based upon what Mr. Thurman testified to, and even based upon what the officer testified to... You're asking us to make findings. Is that what you're asking? Well, I'm asking the court to find that what was found by the district court is erroneous, clearly erroneous in this case, I believe. Again, based upon what Mr. Thurman testified to, based upon the prior events, and again, even based upon what the officer had testified himself to. That's what I'm asking the court to do. Any fancy stuff? All based upon the dog allegory, huh? Well, Your Honor, for... That's a Mutt & Jeff tactic. For a dog lover, I think that I can speak what would happen in a situation. I've seen many dogs, basically, have beaten down, and that's why I drew the analogy. But my point being is that one... Somebody who's gotten bit by dogs, I can tell you, dogs are highly unpredictable. And it can certainly happen. Unpredictable. It can certainly happen. But the point being is that in a situation... I don't think people are any less unpredictable than dogs are. But again, based upon what Mr. Thurman testified to, his... What he testified to is a reasonable-type reaction that a reasonable human being would have had in that situation. The difficulty I have with your argument is that you... The base of it is that Mr. Thurman said something reasonable, and we should accept what Mr. Thurman said. The unfortunate part is that the hearing officer did not credit his testimony. And so how can we, if we're going to rely upon Mr. Thurman, who... Aren't we going to have to be making a finding that... And if so, how can we say that that finding was clearly erroneous? Why is there something that we have to tip over because the judge didn't believe your client? Well, I think the court... The court did credit my client being scared, my client also being disoriented, my client being disoriented as to where his girlfriend was. The court did credit that. At the scene. And once they arrive, who? But subsequently, when they took the... When they were behind the strip mall, subsequently, there was a change of circumstance and the magistrate judge found that at that time he no longer had the problem. Your client testifies to the contrary. In order to overturn that finding by the district court, we have to say that finding was clearly erroneous. What is there that was clearly erroneous about disbelieving your client? Well, I don't even know if this court has to go ahead and say that a particular paragraph in the findings of the court are necessarily clearly erroneous. My client is saying that he's still scared. The court says that the conversation is proceeding in a low key way. What I'm saying is that at this point, basically what the conversation is proceeding is like a man that has already been beaten down. I mean, that has been subjected to an overwhelming show of force. That is my point. Can he ever recover? What if it had been two days later? He may have been recovered then, but not in a situation like this where he finds himself being transported, blindfolded to a location that he doesn't know where it's at, where he finds out that, as he said, I didn't know what the possibilities were. What was the police ready to do? Getting booked into a cell, that would give him a chance to recover. Maybe it would have been later. It's always strange. There's a lot of pleasant things to have happen. Well, at the same time, the court would have to concede this is a situation this arrest is out of the norm. This arrest is, and what happened in the arrest, the show of force of the arrest is certainly out of the norm. I don't know. Is it? Why? Again, you have. They have information to the guys dealing drugs. He's traveling along the highway. They have pretty solid information that he's involved in drug dealing. They know that drug dealers often carry guns. I wouldn't want to open that car and just politely say, hey, step over there and say politely, would you get out? I don't know that you want to do that. It's the kind of thing that if you value your life, you're going to make sure those people get out of the car with their hands showing. And, you know, the only way to really assure that is to have guns thrown. I mean, you know, it's not it's not a pleasant thing, which is on the drug dealers didn't often carry guns and one could be more polite about it. But the fact of the matter is your client had drugs in the car. But if I may respond to that in two ways, the first is that not in every arrest, certainly by no stretch of the imagination, do we have an individual being blindfolded, transported to a second location. Also, in this case, that type of show of force wasn't necessary because there was no evidence that this individual was armed. The informant had given no information to that effect. The police had conducted surveillance of my client. They had seen no weapons and they had seen him raise his shirt and show the gun. Right. What's that, sir? They haven't picked him up. They haven't seen him raise his shirt and show the gun. Right. Well, they had not seen any guns. They were there was no information. There was no positive information either from the informant or from their own independent investigation that there were any guns and the guns involved in this case. OK, I think you're out of time. Yes, sir. Thank you. Good morning. May it please the Court. Thomas Docherty, Assistant United States Attorney, Las Vegas, Nevada. We would ask that you do uphold the finding of the District Court and the Magistrate Court and would just offer that when you look at the Magistrate Court's findings, she has a full seven pages of detailed facts. You read through the transcript. She took an active interest in the hearing, asking follow-up questions of each of the witnesses and provided a very detailed finding of fact. In addition, she also, and I would offer that this actually strengthens her finding of facts, she does give some credibility to the defendant. She doesn't reject out of hand the total of the defendant's testimony. And I would offer that that, in fact, strengthens her findings, that she is willing to make an independent determination with regard to each fact as to the credibility. And we would ask that you uphold that. Thank you very much. Wait a minute. Before you run away. Yes, sir. We've decided in our court there are certain factors that we have to determine and just voluntariness that may be misguided, but it's still the law of the Ninth Circuit. And one of the so-called factors is that we have to determine whether what the defendant was told in relationship to whether you could get a search warrant. Now, in this particular instance, he was advised, as I understand it, that the police told him that he could, they could obtain a search warrant at his house, whether or not he granted his immediate consent. It seems to me that that raises the question of whether or not there was a violation of that factor.  Certainly, Your Honor. The record shows and the finding shows that the court found what was told to Mr. Thurman was we, if you don't consent, we will apply for a warrant. It doesn't mean that we'll get it, but we plan to apply for one. And if you look at the waiver that he signed or the consent to search, it talks about the fact that they can apply for or seek a warrant to search his home. And we would offer that that distinction is very important. In other words, he's not being told it's a fait accompli, that if you don't consent, we're going to get a search warrant. He was told he was going to get a search warrant. He testified that he informed Thurman the police could or didn't have to get a search warrant to go to his home. Then on cross-examination, Vincent said that he revised his statement saying that he told Thurman that he would apply for a warrant if Thurman withheld his consent. So he seems to be changing his description of what was actually said between direct examination and cross-examination. All I can offer, Your Honor, is that what ultimately was found by the magistrate in the district court was that that is what was said, that he could apply, but there was no guarantee that he could get an actual warrant. Then later on, he says, officers are on the way to your house right now at this point. Make it easy on yourself and let them go ahead. Go in and get the rest of the meth. I believe that was the defendant's testimony, Your Honor, not Officer Vincent's. It was according to Thurman on page 96. Yes, sir. So there was sort of a pressure that was put on him about this search warrant issue, whether or not they could get the search warrant. Is what we have dealing with that particular factor sufficient, that we should tip over the determination by the trial court that this was a valid consent to search the house? Obviously, Your Honor, I would argue no, that that would not, that when you look at the total situation with regard to the break in time, the fact that he had the consent. When you look at the total, because the court has now told me I've got to have these distinct factors, and I've got to just focus within this little penned-in area, and one of those penned-in areas deals with this particular issue. Did that particular determination, that particular rendition of what Officer Vincent said to him, is that sufficient to meet that factor? Well, if I understand your question correctly, sir, I don't believe that what he said and what the district court found would go to or cut against a lack of consent on the part of the defendant. In other words, the fact that he is told I can apply for a warrant, I may not necessarily get one, is a fair statement. Okay. And then he says, they're on their way to your house. Why don't you just make it easy on yourself? Give them permission to go in. And again, Your Honor, I would contest that that's in fact what was said, that those are the defendant's words, and I don't believe that was the point of the court. And then later on, he says, Mr. Thurman, he said, quote, officers on their way to your house right now at this point. And then later on, he says, make it easy on yourself and let them go ahead, go in and get the rest of the meth, close quote. And again, Your Honor, Officer Vincent was the officer, and I may be confused, but I believe that was the defendant's testimony, sir, not the police officer. You don't think that was the testimony of the police officer? Again, I may be confused, but I believe that was the defendant's testimony, sir, not Officer Vincent's testimony. Now, it's on page 96 of the record, it says, Topp Thurman Direct. Yeah, but he's the defendant. Yes, Your Honor, he's the defendant, not the officer. Thurman Direct, that's the defendant. If one credited that testimony, you would have some problems. If it had been the officer's testimony, you would have some problems. Or if the court accredited Thurman's testimony. Certainly, we would concede that, that that would be a problem if that, in fact, was the factual finding, that he was told, given that edict, that if he didn't consent, they would get a search warrant anyway. Okay, right, okay, that was according to Thurman. Was that rejected? Yes, Your Honor, it was. By the hearing, by the magistrate? Yes, Your Honor, it was. Okay, all right, I stand corrected. Thank you. Thank you. Okay, thank you very much. Cases are, you will stand submitted. Don't go anywhere, Mr. Garretti. Is Mr. Carr here? We're in the same office, and I believe he is right now in another court, sir. In the same. I think the answer is no. I'm sorry, sir. The answer is no? The answer is no, sir, yes. Okay, well, how about Mr. Atchison? Mr. Atchison is here? Okay, so we'll then take Benitez Perez, and then hope that Mr. Carr shows up before the case is up. Mr. Atchison, you are the one who had the conflict, right? One of the lawyers on this case, and it's now, you're done with it, are you? Mr. Atchison loaned his coat, which is nice. Thank you very much. My coat was doing another hearing, but I wasn't. Good morning, my name is Fred Atchison, and I represent Mr. Benitez Perez. There are two small issues in this case. The first one, I think, the facts of the case show that the original charges that led to the 16 level enhancement in the case was for possession of
judges: Wallace, Kozinski, Thomas